**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JULIO VAZQUEZ,**

                    **Plaintiff,**

          **v.**                                        **5:15-cv-485**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

                    **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

          Plaintiff Julio Vazquez brings this suit under § 205(g) of the Social Security Act

("Act"), as amended, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of

Social Security ("Commissioner") denying his application for Supplemental Security Income

("SSI") benefits.  Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ")

denying his application for benefits is not supported by substantial evidence and is contrary

to the applicable legal standards. Pursuant to Northern District of New York General Order

No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for

judgment on the pleadings.

**I.      PROCEDURAL HISTORY**

          Julio Vazquez applied for SSI benefits on October 26, 2009 alleging a disability

beginning August 2, 2008. (Tr. 292).  His application was initially denied on January

1

12, 2010. (Tr. 132). An ALJ hearing resulted in a decision dated April 4, 2011 again denying his claim. (Tr. 104-116). On September 10, 2012, the Appeals Council granted his request for review and remanded his case, in part, to obtain evidence from a vocational expert. (Tr. 124-126). A second ALJ hearing resulted in a decision dated December 13, 2013 again denying his claim. (Tr. 11-24). That decision became final on April 9, 2015 when the Appeals Council denied his request for review. (Tr. 1). On April 22, 2015, he commenced this action seeking review of that final decision.

## II.    FACTS

The parties do not dispute the underlying facts of this case as set forth by Plaintiff and the Commissioner in their respective briefs. Accordingly, the Court assumes familiarity with these facts and will set forth only those facts material to the parties' arguments.

## III.    THE COMMISSIONER'S DECISION

At the first step of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his protective filing date of October 7, 2009 (Tr. 14). At the second step, the ALJ found that Plaintiff had the following severe impairments: asthma; emphysema; borderline intellectual functioning; major depressive disorder; post-traumatic stress disorder; and alcohol and substance dependence with periods of remission (Tr. 14). At the third step, the ALJ determined that Plaintiff's impairment did not meet or equal the criteria of the listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P (Tr. 14-17).

The ALJ next assessed Plaintiff's residual functional capacity (RFC), i.e., what Plaintiff could still do—mentally and physically—despite his impairment (Tr. 17-23). The ALJ

2

found that Plaintiff had the following RFC:

> The claimant is capable of lifting/carrying and pushing/pulling twenty pounds occasionally and ten pounds frequently, as well as sit for about six hours total in an eight-hour workday and stand/walk for about six hours total in an eight-hour workday. However, he must avoid climbing ladders, ropes, and scaffolds, as well as concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. Additionally, the claimant is limited to frequent balancing, stooping, kneeling, crouching, crawling, as well as occasional climbing of ramps and/or stairs. Mentally, he can understand, remember, and carry out simple instructions and tasks, as well as occasionally interact with co-workers and supervisors. However, the claimant can rarely work in conjunction with co-workers and can have little to no contact with the general public. Furthermore, the claimant is limited to working in a low-stress work environment, defined as one that requires no supervisory duties, independent decision-making, strict production quotas, and only minimal changes in work routine and processes, etc. Finally, the claimant is capable of consistently maintaining concentration and focus for up to two-hour intervals.

(Tr. 17).

At step four, the ALJ found that Plaintiff had no past relevant work (Tr. 23). Turning to step five, the ALJ considered Plaintiff's age, education, work history and RFC, and, relying on testimony from the VE, found that he could perform work that existed in significant numbers in the national economy, that is, as a house cleaner or agricultural produce sorter. (Tr. 23-24).

Plaintiff challenges these findings in various respects. The Commissioner argues that the ALJ's decision is supported by substantial evidence and legally correct and, therefore, should be affirmed.

## IV. STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v.

Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990);

Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler,

J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must

determine whether the Commissioner's findings are supported by substantial evidence in

the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912

F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's

finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. §

405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir.

1984)("It is not the function of a reviewing court to determine de novo whether a Plaintiff is

disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are

binding.")(citations omitted). In the context of Social Security cases, substantial evidence

consists of "more than a mere scintilla" and is measured by "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Richardson v.

Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126

(1938)). Where the record supports disparate findings and provides adequate support for

both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the

ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing

Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122,

126 (2d Cir. 1990). Although the reviewing court must give deference to the

Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a

remedial statute which must be 'liberally applied;' its intent is inclusion rather than

exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

## V.    DISCUSSION

Plaintiff offers three grounds for challenging the ALJ's opinion.  The Court will address each in turn.

### a.    Weight Afforded Plaintiff's Treating Psychiatrist

Plaintiff first argues that the ALJ erred by failing to give controlling weight to the opinions of his treating psychiatrist, John Schubmehl, M.D.   Plaintiff contends that the ALJ improperly discredited Dr. Schubmehl's opinion that Plaintiff would be unable to remember work-like procedures, complete a normal workday on a sustained basis, concentrate and attend to a task over an eight-hour period, and miss more than four days per month due to his impairment. Pl. Br. at 9-20. The Commissioner disagrees, and avers that the ALJ properly weighed the medical opinion evidence in accordance with the regulations and the treating physician rule. Def. Br. p. 12.

### 1.    Treating Physical Rule

Normally, an ALJ is required to find a treating physician's opinion to be controlling when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. 404.1527(c)(2).  "On the other hand, in situations where 'the treating physician issued opinions that [were] not consistent with other substantial evidence in the record, such as the opinion of other medical experts,' the treating physician's opinion 'is not afforded controlling weight." Pena ex rel. E.R. v. Astrue, 2013 WL 1210932, at *15

(E.D.N.Y. March 25, 2013) (quoting <u>Halloran v. Barnhart</u>, 362 F.3d 28, 32 (2d Cir. 2004));

<u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir.1999) ("When other substantial evidence in the

record conflicts with the treating physician's opinion . . . that opinion will not be deemed

controlling. And the less consistent that opinion is with the record as a whole, the less

weight it will be given."). "'[T]o override the opinion of the treating physician, we have held

that the ALJ must consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of

treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of

the opinion with the remaining medical evidence; and, (4) whether the physician is a

specialist.'" <u>Greek v. Colvin</u>, 802 F.3d 370, 375 (2d Cir. 2015) (quoting <u>Selian v. Astrue</u>, 708

F.3d 409, 418 (2d Cir. 2013)). An ALJ must "set forth her reasons for the weight she

assigns to the treating physician's opinion." <u>Shaw v. Chater</u>, 221 F.3d 126, 134 (2d Cir.

2000). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating

physician is a ground for remand." <u>Snell</u>, 177 F.3d at 133.

## 2. Evidence From Dr. Schubmehl

On December 6, 2010, Dr. Schubmehl, Plaintiff's treating psychiatrist at Clifton

Springs Behavioral Health Services (Clifton Springs BHS), completed a form entitled

"evaluation of the residual functional capacity of the mentally impaired patient" at the

request of Plaintiff's attorney (Tr. 1028-31). The doctor indicated that he had been treating

Plaintiff since October 7, 2010 and had last seen Plaintiff on November 9, 2010 (Tr. 1031).

Dr. Schubmehl assessed that Plaintiff had a good[1] ability to respond appropriately to

---

[1]The form asked the doctor to check "unlimited" "good" "fair" or "poor" for each category of mental functioning. At the beginning of the form, the ratings were defined as follows: Unlimited – the ability to function in this area is more than satisfactory; Good – the ability to function in this area is limited but satisfactory; Fair – The ability to function in this area is seriously limited and will result in periods of unsatisfactory performance (continued...)

6

supervision, noting that he was "respectful of others" (Tr. 1029). He stated that Plaintiff had

a good ability to function independently on a job, and explained Plaintiff was "goal directed

to accomplish task[s]" (Tr. 1029). The doctor further found that Plaintiff had a good ability to

respond to coworkers, noting that he was "socially appropriate, quiet, [and] well mannered"

(Tr. 1029). He further found that Plaintiff had a good ability to abide by occupational

rules/regulations and make simple work-related decisions (Tr. 1029-30). He also concluded

that Plaintiff had a good ability to maintain social functioning, noting that he "works well with

others" (Tr. 1030).  Dr. Schubmehl found that Plaintiff had a fair ability to remember detailed

instructions, and a fair ability to exercise appropriate judgment, as he was "impulsive at

times" (Tr. 1029). He further assessed that Plaintiff had a fair ability to be aware of normal

hazards and make judgments to avoid hazards, as he had poor concentration at times (Tr.

1030). He concluded that Plaintiff had a fair ability to tolerate customary work pressures in a

work setting, but declined to explain the basis for his finding (Tr. 1030).  Dr. Schubmehl

assessed that Plaintiff had a poor ability to complete a normal workday on a sustained basis

due to "some health issues –asthma" (Tr. 1029). He also found that Plaintiff had a poor

ability to concentrate and attend to a task over an eight-hour period, noting that Plaintiff was

"unable to concentrate for 8 hour shift" (Tr. 1029). Dr. Schubmehl opined that the limitations

had been consistent and continuing since August 2008 (Tr. 1031). He further assessed that

Plaintiff was likely to be absent from work more than four days a month due to his

impairments (Tr. 1031).

### 3. ALJ's Treatment of Dr. Schubmehl's Opinion

---

[1](...continued)
at unpredictable times; Poor – No useful ability to function in this area. (Tr. 1028).

Here, the record contained eight medical source opinions regarding Plaintiff's mental limitations (Tr. 573 (Dr. Thomassen), 595-97 (Dr. Kamin), 632 (Dr. Shapiro), 664-66 (Dr. Kudler), 802 (Dr. Ransom), 851-53 (Dr. Hochberg), 1028-31 (Dr. Schubmehl), 1574 (Dr. Finnity)). See also Pl. Br. at 3-6. The Commissioner argues that the ALJ properly weighed these opinions and reached the above-referenced RFC finding that is supported by substantial evidence. Def. Br. p. 13 (citing Matta v. Astrue, F. App'x 53, 56 (2d Cir. 2013) (an ALJ's RFC finding need not perfectly correspond to any single medical source opinion; the ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole.)). In this regard the Commissioner argues that "of these eight opinions, six are fully consistent with and support the ALJ's RFC finding." Id.

In addressing Dr. Schubmehl's opinions, the ALJ wrote:

In ... finding the claimant capable of understanding, remembering, and carrying out simple instructions and tasks, but with only occasional interaction with co-workers and supervisors, as well as little to no contact with the general public and limited to "low stress" work, the undersigned has adequately considered extensive mental health/substance abuse treatment records from Geneva General Hospital, [Finger Lakes Addiction Counseling and Referral Agency (FLACRA)], Clifton Springs Behavioral Health, St. James Mercy Hospital, and McPike Addiction Treatment Center.

These records document the claimant's ability to perform all required resident house jobs, as well as his sustained ability to volunteer at Clifton Springs Hospital and Clinic in a maintenance and landscaping position. After a period of rehabilitation from July 2009-November 2009, and subsequent November 2009-February 2010 supportive living arrangement, the claimant relapsed and was admitted for treatment at McPike Addiction Treatment Center in April 2010 for approximately one month. Subsequent relapses resulted in monthly readmissions in October 2011 and August 2012. Admission global assessment of functioning scores are varied, but consistently reflect exacerbated symptomology secondary to periods of substance abuse and non-compliance with treatment for his underlying mental health issues. Notably, one month prior to the claimant's protective filing date, his global assessment of functioning score, after sustained sobriety in treatment, was rated sixty-five by Dr. Jamison, indicative of only mild symptoms. The

8

undersigned has considered all global assessment of functioning scores and accorded them some weight, noting that longitudinally they reflect periodic symptom exacerbation due to stressors that are adequately accounted for in the decision's residual functional capacity assessment.

Significantly, treating source Dr. Schubmehl, noting only two months of treatment, opined that the claimant had a fair ability to comprehend and carry out simple instructions, remember detailed instructions, exercise appropriate judgment, be aware of normal hazards and make necessary adjustments, and tolerate customary work pressures in a work setting, including production requirements and demands. He further found the claimant to have a good ability to respond appropriately to supervision, respond appropriately to co-workers, function independently on a job, abide by occupational rules, make simple work-related decisions, and maintain social functioning.

However, he also found the claimant to have a poor ability to remember work procedures, complete a normal workday on a sustained basis, as well as concentrate and attend to a task over an eight-hour period. Furthermore, he would be expected to deteriorate if placed under stress and miss greater than four days of work a month. The undersigned accords this opinion some weight. Although Dr. Schubmehl is a treating source, the undersigned finds that mental health progress notes, as well as the claimant's ability to volunteer for five-hour periods and engage in a wide range of activities of daily living, support a finding that the claimant is capable of sustaining sufficient attention/concentration to complete a full workday, with some additional restrictions. Those restrictions, without which the claimant's symptoms would be expected to exacerbate, adequately accommodate his conditions. Additionally, the form used is inherently confusing, insofar that a rating of "fair" would equate to disability, inconsistent with its common meaning.

Tr. 21-22.

## 4. Plaintiff's Treating Physician Rule Arguments

Plaintiff asserts several different reasons why the ALJ's weight assessment of Dr. Schubmehl's opinion is improper. The Court will address each individually.

## A. "Additional Restrictions" not appropriately defined

First, Plaintiff argues that "the ALJ fails to identify the 'additional restrictions' Mr. Vazquez requires in order to work without exacerbating his symptoms," without which,

9

Plaintiff contends, "it is impossible to determine whether those restrictions are consistent with the opinion of Dr. Schubmehl or any other medical source." Pl. Br. p. 12. The Commissioner argues that the "additional restrictions" are expressly defined in the mental RFC finding, and explained thoroughly in the narrative that follows. In particular, the Commissioner argues that the restrictions include: no more than occasional interaction with coworkers and supervisors and rarely working in conjunction with coworkers; no contact with the general public; and a low-stress work environment (defined as one that requires no supervisory duties, independent decision-making, strict production quotas, and only minimal changes in work routine and processes) (Tr. 17).

The ALJ explained that "[g]iven the claimant's propensity to relapse, the undersigned finds restricting the claimant's interaction with others, as well as exposure to work stress, more accurately reflects his true functional capacity and adequately addresses the triggers to substance abuse." (Tr. 21). Thus, the ALJ's rationale is plainly evident by reading the opinion as a whole.

**B.     ALJ's reference to "mental health progress notes"**

Next, Plaintiff argues that the ALJ's general reference to inconsistent mental health progress notes was insufficiently descriptive, and argues that, regardless, any attempt to compare Dr. Schubmehl's opinion to the treatment notes would amount to an unlawful reinterpretation of clinical findings. Pl. Br. at 12-13. However, the regulations require the ALJ to compare medical source opinions with the treatment record. See 20 C.F.R. §§416.927(c)(2) (explaining that when evaluating a treating source opinion, "[w]e will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent

10

laboratories."), 416.927(c)(4) (noting that the more consistent an opinion is with the record as a whole, the more weight it will be given). Further, the ALJ specifically noted that he considered records from Clifton Springs BHS (where Dr. Schubmehl treated Plaintiff), in addition to Geneva General Hospital, FLACRA, St. James Mercy Hospital, and the McPike Addiction Treatment Center (Tr. 21). As the Commissioner points out, mental status examinations from these facilities generally revealed normal mental functioning, with some depressed or anxious mood and affect and no more than mild-to-moderate impairment in memory. See Def. Br. p. 17 (citing Tr. 963-64, 996-97, 1002-03, 1006-07, 1231-32, 1240, 1255-56, 1275-76, 1360, 1466, 1496, 1590). The Court finds that the reference to "inconsistent mental health progress notes" was sufficiently descriptive, and did not amount to an unlawful reinterpretation of clinical findings.

### C. Dr. Schubmehl's opinion is supported by his treatment records

Plaintiff also contends that the reduced weight afforded Dr. Schubmehl's opinion is improper because his opinion is supported by his treatment records which cite diagnoses of major depression, recurrent, moderate; dysthymic disorder; and poly-substance abuse. Pl. Br. at 14. However, as the Commissioner argues, these diagnoses alone provide little, if any, insight into Plaintiff's functional abilities. Moreover, the mental status examination findings from Clifton Springs BHS reveal that Plaintiff was cooperative and oriented, with normal speech, goal directed and logical thought processes, appropriate thought content, normal intelligence, insight, judgment, and attention span, sometimes depressed or anxious mood, and no hallucinations or delusions (Tr. 996-97, 1002-03, 1006-07, 1231-32, 1240, 1255-56, 1275-76). Given the largely normal mental status findings, the ALJ reasonably

11

found that Dr. Schubmehl's opinions were inconsistent with the mental health progress notes (Tr. 22).

### D. ALJ's reference to Plaintiff's ability to engage in activities

Plaintiff next argues that it was

> error for the ALJ to reject Dr. Schubmehl's opinion because of Mr. Vazquez's ability to 'engage in a wide range of activities of daily living.' Once again, this statement is too vague to be a good reason for rejecting treating source opinion. At a minimum, the ALJ should have identified specific daily activities together with the frequency and duration of their performance while explaining which of Dr. Schubmehl's conclusions had been undermined and why.

Pl. Br. p. 14 (citing SSR 95-5p).

There are several reasons not to accept Plaintiff's argument. First, the Social Security Ruling cited by Plaintiff as support for this contention does not pertain to the evaluation of medical source opinions. See SSR 95-5p ("Considering Allegations of Pain and Other Symptoms in Residual Functional Capacity and Individualized Functional Assessments and Explaining Conclusions Reached").

Second, the ALJ properly considered the inconsistency between Plaintiff's daily activities and the doctor's opinion as one of the factors when evaluating Dr. Schubmehl's opinion. See 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). In particular, the ALJ found that Plaintiff's ability to volunteer five days a week for five-hour periods was inconsistent with Dr. Schubmehl's opinion (see Tr. 371, 737). This volunteer work, while not sustained for eight-hour periods, nevertheless reflects that Plaintiff was capable of maintaining a regular schedule and concentrating and attending to tasks for an extended period of time.

Third, the volunteer work Plaintiff performed was in maintenance and outdoor landscaping, which often requires exposure to temperature extremes and respiratory irritants (see Tr. 737). Thus, there was a basis to discount Dr. Schubmehl's opinion that Plaintiff could not complete a normal workday on a sustained basis due to his "health issues—asthma" (Tr. 1029). Further, there is no basis for Plaintiff's conclusory contention that because this work was "performed in a sheltered environment such as a halfway house or hospital", it was "more likely to resemble therapy than a job." P. Br. at 15. Maintenance and outside landscaping, whether performed at a hospital or any other location, is generally considered work activity, not therapy. See e.g., DOT code 899.381-010 (Maintenance Repairer, Building (any industry)); DOT code 408.687-014 (Laborer, Landscape).

### E.     Form used by Dr. Schubmehl

Plaintiff also argues that remand is warranted because the ALJ improperly discounted Dr. Schubmehl's opinion because the form he was asked to complete was inherently confusing, insofar as the definition of "fair" on the form was contrary to the common-sense meaning of the word. Pl. Br. at 15-16. Plaintiff argues that there was no indication that Dr. Schubmehl was misled by the rating terms used on the form, and, more importantly, that his claim is supported by the areas of intellectual functioning Dr. Schubmehl rated as "poor." Id. p. 16.

While Plaintiff is correct that there is no indication that Dr. Schubmehl was misled by the rating terms used on the form, and that Dr. Schubmehl rated him poorly in certain areas, the Court's review of the Commissioner's determination is limited to two inquiries - whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence. See 42 U.S.C. § 405(g). Here, the Court

13

finds that the ALJ applied the correct legal standard in that his decision to afford Dr. Schubmehl's opinion limited weight was not based solely upon on the responses on the form. Rather, when the ALJ's decision is read in its totality it is clear that, in assessing the weight to be afforded Dr. Schubmehl's opinion, the ALJ analyzed (1) the frequency, length, nature, and extent of treatment by Dr. Schubmehl; (2) the amount of medical evidence supporting Dr. Schubmehl's opinion; (3) the consistency of Dr. Schubmehl's opinion with the remaining medical evidence; and, (4) whether Dr. Schubmehl was a specialist.

Further, there is substantial evidence supporting the ALJ's determination in this regard. Dr. Schubmehl's opinion is inconsistent with the opinions of six other doctors. Significantly, three of these doctors, each of whom opined that Plaintiff was capable of performing simple work, are State agency medical consultants who are highly qualified psychologists and experts in the evaluation of the medical issues in disability claims under the Act. 20 C.F.R. § 416.927(e); SSR 96-6p. Additionally, Dr. Schubmehl's opinion remains inconsistent with the objective mental status findings in the treatment record as well as Plaintiff's daily activities.

Plaintiff has failed to demonstrate that Dr. Schubmehl's opinion was due controlling weight under the treating physician rule. Similarly, he has failed to show that Dr. Schubmehl's opinion was due greater weight than the six medical source opinions upon which the ALJ relied, and which support the mental RFC finding.

### b.    Credibility Assessment

Plaintiff next argues that the ALJ failed to provide adequate reasons for finding Plaintiff less than fully credible. Pl. Br. at 23-24. The Commissioner maintains that because substantial evidence supports the ALJ's findings, his credibility determination should be

14

affirmed.  The Court agrees with the Commissioner.

"It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." Cichocki v. Astrue, 534 Fed. Appx. 71, 75 (2d Cir 2013) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).  The Social Security regulations charge the ALJ with determining whether a claimant's symptoms are the result of "a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms." Id.  If so, the ALJ must then examine the evidence to determine "how the symptoms affect the claimant." Id. (citing 20 C.F.R. § 416.929(c)(1)).  In assessing the credibility of a claimant's subjective complaints "about the intensity and persistence of pain and other symptoms," the ALJ may not reject those claims simply "'because the available medical evidence does not substantiate" them. Id. at 76 (quoting 20 C.F.R. § 416.929(c)(2).  Instead, the ALJ is to make a credibility determination based on several factors. Id. (See 20 C.F.R. § 416.929(c)(3)).  "The ALJ's decision 'must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight.'" Id. (quoting SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186, at *2).

Here, the ALJ went through a thorough review of the evidence in the case record, Tr. 17- 20, leading the ALJ to conclude that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Id. p. 19.  While Plaintiff

captions his argument under a heading contending that the ALJ erred because he "failed to give good reasons for discounting Mr. Vazquez's credibility," Pl. Br. p. 24, the substance of the argument is based on specific disagreements with the ALJ's conclusions. See id.[2] Plaintiff's argument is thus a challenge under the substantial evidence rule. See Pellam v. Astrue, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review").

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support his position; what he must show is that no reasonable fact finder could have reached the ALJ's conclusions on this record. See Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012); see also Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the

---

[2]Plaintiff argues:

The ALJ discounted Mr. Vazquez's credibility because he reported no difficulty interacting with others in his supportive living program and participated in group meetings. (Tr. 18 ¶ 3). But activities performed within a supportive living program shed no light on the ability to sustain competitive work where such supports are absent. The ALJ also cited Mr. Vazquez's ability to cook, clean, do dishes and laundry, shop, pay bills, count change, watch television, draw and visit friends. (Tr. 18 ¶ 3). These activities do not undermine Mr. Vazquez's credibility for the same reason they could not properly be used to discredit Dr. Schubmehl's opinion. Supra p. 14, 15. The ALJ also disbelieved Mr. Vazquez because of his poor work history. (Tr. 23 ¶ 3). Is it fair to penalize Mr. Vazquez because he has suffered from disabling mental impairments for most of his life after surviving a degree of childhood trauma which would leave few unscathed? The ALJ failed to consider that Mr. Vazquez's credibility is supported by the evaluations of two consultative examiners: Dr. Shapiro found her examination to be consistent with his allegations (Tr. 632) and Dr. Finnity found her examination to be consistent with psychiatric symptoms which interfere with the ability to function on a daily basis (Tr. 1574). The ALJ also failed to consider that Mr. Vazquez's credibility is substantially enhanced by his extensive mental health treatment. See SSR 96-7p, 1996 SSR LEXIS 4, *21.

Pl. Br. p. 24.

appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision" (citations omitted)); <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir. 1982) ("On an appeal such as this, we are faced with a simple reality which appellants often overlook, namely, that factual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the preponderance of the evidence"). Plaintiff has not met this standard. Because substantial evidence supports the ALJ's findings, his credibility determination must be affirmed.

### c.    Reliance on the Testimony of the Vocational Expert

Finally, Plaintiff argues that the ALJ improperly relied upon the Vocational Expert's ("VE") testimony because the ALJ's hypothetical question to the VE did not accurately reflect Mr. Vazquez's limitations. Pl. Br. p. 20.

The ALJ asked the VE whether employment positions existed in the national economy for a hypothetical individual who was functionally illiterate, had no past relevant work, needed to avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation and other respiratory irritants, and was

> [m]entally able to understand, remember, and carry out simple instructions and tasks; occasionally interact with coworkers and supervisors; rarely work in conjunction with coworkers; little to no contact with the general public; able to work in low-stress work environments, and that is no supervisory duties, no independent decision-making required, no strict production quotas; minimal changes in work routine and processes, et cetera; and able to consistently maintain concentration and focus for up to two hours at a time.

Tr. 67.[3]

---

[3] The mental capacity limitations in this hypothetical question mimic the mental capacity limitations of the RFC found by the ALJ:

Mentally, he can understand, remember, and carry out simple instructions and tasks, as well

(continued...)

The VE concluded that an individual with these hypothetical limitations would be able to perform a laundry laborer position and an industrial cleaner position. Id. The ALJ then asked whether jobs existed for the same hypothetical individual but with the additional limitations of being able to only work at the light exertional work level. Id. p. 68. The VE identified housekeeper cleaner and agricultural produce sorter positions. Id. The ALJ then asked the VE to assume that the hypothetical individual could only work at the sedentary exertional level, to which the VE responded that the individual would be able to perform available label picker and brake linings coater positions. Id. pp. 68-69. The ALJ then asked the VE to assume that the hypothetical individual with the previously identified limitations would likely miss four days of work per month. Id. p. 69. The VE responded that such an individual would not be qualified to fulfill any work on a full-time competitive basis. Id.[4]

Plaintiff argues that the hypothetical limitations presented by the ALJ were inadequate because they do not include all the limitations found by the ALJ. For instance, based on the opinions of Drs. Thomassen, Shapiro and Ransom, the ALJ found that Mr. Vazquez suffers from borderline intellectual functioning. (Tr. 14 , ¶ 2, 574, 631, 802).

---

[3](...continued)
as occasionally interact with co-workers and supervisors. However, the claimant can rarely work in conjunction with co-workers and can have little to no contact with the general public. Furthermore, the claimant is limited to working in a low-stress work environment, defined as one that requires no supervisory duties, independent decision-making, strict production quotas, and only minimal changes in work routine and processes, etc. Finally, the claimant is capable of consistently maintaining concentration and focus for up to two-hour intervals.

(Tr. 17).

[4]In response to questioning by the Plaintiff's attorney, the VE testified that an individual who had two or more unexcused absences per month would not be able to perform the positions that the VE identified. Tr. 69. The VE also indicated that an individual who was "off task 20 percent of the workday," who was limited to working two hours a day, who required that the same instructions be repeated four or five times during the workday, who had no useful ability to remember work procedures, who did not have the ability to complete a normal workday on a sustained basis, and who did not have the ability to concentrate intend to a task over an eight hour would not be able to perform the positions that she identified. Id. pp. 69-71.

18

Plaintiff further argues that "the ALJ appeared to accept that Mr. Vazquez's functional capacity may wax and wane as he is subject to periodic symptom exacerbation," Pl. Br. p. 21 (citing Tr. 22, ¶¶ 1, 4), but failed to ask the VE to consider any limitation on the ability to sustain work activity on a consistent basis.   Finally, Plaintiff argues that because the ALJ incorrectly determined Mr. Vazquez's mental residual functional capacity, he failed to include in his hypothetical question a number of significant limitations identified by various doctors. Id. [5]

The Commissioner argues, however, that the hypothetical pose to the VE mirrored exactly the RFC finding by the ALJ, and thus, Plaintiff's argument that the ALJ improperly relied upon the VE's testimony is simply a rehashing of his previous arguments regarding whether the ALJ properly weighed Dr. Schubmel's opinion and the other evidence when arriving at the mental component of the RFC.  The Commissioner contends that because the ALJ properly weighed the evidence, and because there is substantial evidence supporting the RFC, the hypothetical questions presented to the VE provided a proper basis to conclude that Plaintiff could perform work that existed in significant numbers in the national economy.

A vocational expert may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations. Crossman v. Comm'r of Soc. Sec., 2015 WL 5943506, at *16 (N.D.N.Y. Oct. 13, 2015)(citing Rautio v. Bowen, 862 F.2d 176, 180 (8th

---

[5]For example, Plaintiff argues that Dr. Schubmehl found that Plaintiff has no useful ability to remember work procedures, complete a normal workday on a sustained basis, or concentrate or attend to a task over an eight-hour period, Dr. Finnity found that Plaintiff had difficulty with a regular schedule, relating with others, and dealing with stress, and Dr. Schapiro found that Plaintiff may have difficulty understanding and following some instructions and directions, completing task, and interacting appropriately with others.

Cir.1988); <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1553–54 (2d Cir.1983)). In cases where the RFC assessment is supported by substantial evidence, an ALJ may present a vocational expert with a hypothetical based upon that RFC assessment. <u>Tankisi v. Comm'r of Soc. Sec.</u>, 521 F. App'x 29, 35 (2d Cir. 2013)("Tankisi correctly notes that there must be substantial evidence to support the hypotheticals put to the vocational expert. However, given our conclusion above that the ALJ's RFC finding was supported by substantial evidence, we see no error in the ALJ's questioning or in his use of the resulting testimony.")(citation omitted); <u>Calabrese v. Astrue</u>, 358 F. App'x 274, 277 (2d Cir. 2009)("As this RFC assessment is supported by substantial evidence, the content of the ALJ's hypotheticals was entirely proper.").

Turning to Plaintiff's individual challenges, "[i]t is of no moment that the ALJ failed explicitly to reference [Plaintiff's] borderline IQ" because the limitations the ALJ gave the vocational expert with respect to Plaintiff's ability to understand, remember, and carry out simple instructions and tasks, as well as occasionally interact with co-workers and supervisors, derived from the numerous medical opinions that formed the basis of the ALJ's RFC assessment. <u>Calabrese</u>, 358 F. App'x at 277. As indicated by the ALJ in his decision, several doctors who performed consultive examinations characterized Plaintiff's cognitive functioning as "below average, borderline, and deficient." Tr. 16. "As at least one of our sister circuits has observed, a hypothetical 'need not frame the claimant's impairments in the specific diagnostic terms used in the medical reports, but instead should capture the concrete consequences of those impairments.'" <u>Calabrese</u>, 358 F. App'x 277 (quoting <u>England v. Astrue</u>, 490 F.3d 1017, 1023 (8th Cir. 2007)). Inasmuch as the hypothetical crafted by the ALJ captured the concrete consequences of Plaintiff's impairment from his

20

borderline intellectual functioning, his challenge to the adequacy of the ALJ's hypothetical simply because he did not mention Plaintiff's borderline intellectual functioning is without merit. Id.; see also Decker v. Comm'r of Soc. Sec., 2014 WL 2176960, at *3 (N.D.N.Y. May 22, 2014)("[T]he ALJ appropriately considered the limitations arising out of Decker's intellectual deficits and his RFC determination is supported by substantial evidence. Therefore, contrary to Decker's contentions, the ALJ appropriately relied on the RFC determination when questioning the VE, without explicitly indicating a claimant whose intellectual functioning is in the borderline range.").

With regard to Plaintiff's argument that the ALJ appeared to accept that Mr. Vazquez's functional capacity may "wax and wane" as he is subject to periodic symptom exacerbation, the ALJ noted that Dr. Schubmehl found that Plaintiff had a poor ability to complete a normal workday on a sustained basis and would be expected to deteriorate if placed under stress and miss greater than four days of work a month.  Tr. 22.  The ALJ accorded this opinion some weight but found that mental health progress notes, as well as Plaintiff's ability to volunteer for five-hour periods and engage in a wide range of activities of daily living, supported a finding that stress-avoidance restrictions in the RFC sufficiently accommodated this condition. Id.  Simply stated, the ALJ's decision can be read as discounting Dr. Schubmehl's opinion that Plaintiff would miss greater than four days of work a month if restrictions in the RFC prohibited Plaintiff from working in a stressful situation-which the RFC did incorporate.  Similarly, the ALJ addressed Plaintiff's poly-substance dependence and propensity to relapse when he addressed the opinions of Drs. Shapiro, Ransom, and Finnity, the extensive mental health/substance abuse treatment records, and Plaintiff's "sustained ability to volunteer at Clifton Springs Hospital and Clinic in a

21

maintenance and landscaping position." Id. p. 21.  In this regard, the ALJ found that Plaintiff exhibited periodic symptom exacerbation due to stressors that were "adequately accounted for in the decisions residual functional capacity assessment." Id. p. 22.

Thus, to the extent Plaintiff challenges the propriety of the ALJ's decision finding Plaintiff capable of working and impliedly rejecting the conclusion that Plaintiff would be disqualified because he would miss four days or more of work a month, Plaintiff is, as the Commissioner argues, challenging the RFC.  Because the RFC is supported by substantial evidence, and because the ALJ accounted for the possibility of Plaintiff missing days of work due to periodic symptom exacerbation due to workplace stressors by adding stress-related restrictions in the RFC, Plaintiff's argument is without merit. See Mancuso v. Astrue, 361 F. App'x 176,179 (2d Cir. 2010) (explaining that, if the ALJ's RFC assessment is supported by substantial evidence, it is appropriate for him to rely on that RFC assessment in questioning the VE).

For the same reasons, there is no merit to Plaintiff's argument that the ALJ erred by failing to include in his hypothetical question a number of significant limitations identified by various doctors.  Again, this argument is, at its core, a challenge to the propriety of the RFC. Because the RFC is supported by substantial evidence, the Court finds no error in the questions presented to the VE, or in the ALJ's determination that Plaintiff was not disabled because he could perform work that existed in substantial numbers in the national economy.

**VI.    CONCLUSION**

For the reasons set forth above, Plaintiff's motion for judgment on the pleadings is DENIED, Defendant's motion is GRANTED, and the decision of the Commissioner is AFFIRMED.

**IT IS SO ORDERED.**

Dated:September 20, 2016

Thomas J. McAvoy
Senior, U.S. District Judge